UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DUSTIN OF THE FAMILY PATRICK,          :
      Plaintiff,          :
                     :
      v.          :          No. 5:25-cv-1847
                     :
TRACY BROWN,          :
      Defendant.          :
_____

**O P I N I O N**
**Defendant Tracy Brown's Motion to Dismiss the Second Amended Complaint,**
**ECF No. 46 – Granted**

**Joseph F. Leeson, Jr.**                                             **June 17, 2026**
**United States District Judge**

## I.          INTRODUCTION

Plaintiff "Dustin of the Family Patrick" brings this *pro se* action against Defendant Tracy

Brown, Director of the Berks County Domestic Relations Section, for compelling him to

participate in Pennsylvania's Title IV-D Child Support Enforcement Program and to comply

with his court-ordered child support obligations, supposedly in violation of the Contract Clause

of Article I, Section 10 of the United States Constitution and the Due Process Clause of the

Fourteenth Amendment. Plaintiff Patrick asserts that he suffered financial loss, property loss, and

emotional distress as a result of his "involuntary association and participation" in the child

support program. Defendant Brown has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and

12(b)(6). For the reasons stated below, the Motion to Dismiss is granted.

## II.    BACKGROUND[1]

### A.  Factual Allegations

Plaintiff "Dustin of the Family Patrick" (hereinafter "Patrick")[2] is a resident of Boyertown, Pennsylvania. *See* Compl., ECF No. 1. Defendant Tracy Brown serves as Director of the Domestic Relations Section ("DRS") of the Berks County Court of Common Pleas. *See* Second Am. Compl. 2 ¶ 3,[3] ECF No. 43. In her role as DRS Director, Brown "implement[s] public policy for the State of Pennsylvania," *id.*, including "Title 42, The Public Health and Welfare, Chapter 7, Subchapter IV, Part D," *id.* at 2 ¶ 3 n.5, otherwise known as the "Federal-State Title IV-D Child Support Enforcement Program," *id.*, at 2 ¶ 4, which operates "to ensure

---

[1]     The Court must accept all allegations in the Second Amended Complaint as true and view them in the light most favorable to the nonmoving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) The facts in the Background section are written accordingly.

[2]     In his original Complaint, Plaintiff Patrick self-identifies as "Dustin of the Family Patrick" and says he "never [c]onsented to succeed or answer to the legal name of the *ens legis* DUSTIN PATRICK A.K.A. the 42 U.S.C. § 666(a)(3)(C) non-custodial parent positively identified as 20 C.F.R. § 422.103(d) property, as in ownership." *See* ECF No. 1 at 4. The Court had read this to say that Patrick does not "consent" to being called "Dustin Patrick" and instead prefers the moniker "Dustin of the Family Patrick." Construing the *pro se* Complaint liberally, the Court also read this to suggest that DRS may have *misidentified* Patrick as a non-custodial parent subject to state child support enforcement procedures, as described under 42 U.S.C. § 666, and who is registered with the Social Security Administration under the name "Dustin Patrick," *see* 20 C.F.R. § 422.103(d) (explaining how a social security card bears the assignee's name and social security number). The Court no longer finds this to be the case, as the Second Amended Complaint does not repeat this assertion, and does not suggest that "Dustin of the Family Patrick" is not the same person as "Dustin Patrick," or that the communications Patrick received from DRS addressed to "Dustin Patrick" were sent to him in error. Quite the reverse, Plaintiff signs his Second Amended Complaint as "Dustin Patrick." *See* ECF No. 43 at 11. Given that Patrick drafted the document himself *pro se*, this is enough for the Court to surmise that there is no issue of misidentification here, and that Plaintiff's legal name is "Dustin Patrick," even if he purports to prefer the moniker "Dustin of the Family Patrick." Henceforth, this Opinion shall refer to Plaintiff "Dustin of the Family Patrick," a.k.a. "Dustin Patrick," as simply "Patrick."

[3]     Plaintiff Patrick restarts his paragraph numbering multiple times throughout the Second Amended Complaint, so this Opinion shall cite to the Second Amended Complaint by both page number and paragraph number. *See* ECF No. 43.

the timely establishment of child support orders, paternity determinations, enforcement, and the collection of current and past-due support," *id.* at 3 ¶ 7. Patrick alleges that "[o]n one or more occasions," *id.* at 5 ¶ 2, Brown and "the employees under her direction" used "implied threats and trickery," *id.* at 3 ¶ 5, to procure Patrick's cooperation with DRS and "participation" in his child support proceedings, including "inform[ing] the plaintiff in writing that if he failed to appear, a warrant for his arrest could be issued," *id.* at 5-6 ¶ 2. Patrick alleges that he "appeared and participated in proceedings related to the Title IV-D Child Support Enforcement Program, not of his own free will but out of fear of arrest." *Id.* at 6 ¶ 4. The result of these child support proceedings was a garnishment on Patrick's wages in the amount of $330.46 per month, and the revocation of Patrick's passport privileges. *Id.* at 10 ¶ 1. Patrick laments that he "had to pay $8,000.00 to have the passport restored." *Id.*

On June 23, 2025, Patrick mailed Brown a document titled "Notice to Terminate My Involuntary Association with the Title IV-D Agency and My Involuntary Association Participation in the Title IV-D Program," and a document titled "Denial of Rights under Color of Law under 18 USC § 242, 245, and 42 USC § 1983." *Id.* at 6 ¶ 1. These documents alleged that Patrick was compelled to "associate" with the Title IV-D child support program in violation of his constitutional rights, and "included a withdrawal of consent to participate in the IV-D Program." *Id.* at 6 ¶ 2. Patrick asserts that he never "expressed [an] intention to enter into an agency relationship with the Commonwealth of Pennsylvania or the Domestic Relations section of the Court of Common Pleas in Berks County," *id.* at 3 ¶ 5, and never "consent[ed] to waive his constitutional rights," *id.* at 4-5 ¶ 8, including those "to contract or not to contract, or the right to impartial due process," *id.* at 7 ¶ 3 n.14.

### B. Procedural History

On April 8, 2025, Patrick filed a Complaint in this Court against Defendants "Jaylene Bowers, through the IV-D Agency," and "Tracy Brown, through Domestic Relations Section." *See* Compl., ECF No. 1. The Complaint asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331, and alleges various constitutional violations brought pursuant to 42 U.S.C. § 1983, including violations of the First, Fourth, Fifth, Seventh, Thirteenth, and Fourteenth Amendments. *See id.* On June 3, 2025, Patrick filed an Amended Complaint for the same constitutional violations. *See* ECF No. 15. On July 16, 2025, Defendant Bowers filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* ECF No. 26. On July 17, 2025, Defendant Brown also filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* ECF No. 27. On August 1, 2025, Patrick filed a Motion for Leave to Amend Complaint to Clarify [his] Individual Capacity Claims against Defendants Bowers and Brown, *see* ECF No. 33, which the Court granted on February 10, 2026, with instruction that any amended pleading must be a complete document in and of itself, "must allege sufficient facts to demonstrate that this Court has jurisdiction over the instant matter," must avoid conclusory allegations, and must "state[] with specificity his factual allegations and claims, and clarif[y] the capacities in which Defendants are sued and to what extent they were personally involved in the misconduct alleged." *See* ECF No. 42.

Patrick filed his Second Amended Complaint on March 1, 2026. *See* ECF No. 43. In it, Patrick indicates that he "wishes to remove Defendant #1, Jaylene Bowers, Title IV-D Director, from the complaint," and to proceed against Defendant Tracy Brown, only.[4] *See id.* at 1 ¶ 1. The

---

[4]    Defendant Jaylene Bowers is the Director of the Bureau of Child Support Enforcement at the Pennsylvania Department of Human Services. *See* ECF No. 26. The Court has since terminated Jaylene Bowers as a defendant in this matter. *See* ECF No. 48.

Second Amended Complaint asserts that Brown, and the employees under her direction, "violated the contract clause in Article 1, Section 10 of the U.S. Constitution," U.S. Const. art. I, § 10, cl. 1, by compelling Patrick to "associate," to "contract," and to "enter into an agency relationship with the Commonwealth of Pennsylvania or the Domestic Relations section of the Court of Common Pleas in Berks County." *See id.* 3 at ¶ 5. The Second Amended Complaint also asserts that Brown deprived Patrick of "impartial due process" because the Commonwealth of Pennsylvania receives incentive payments from the Federal Government under 42 U.S.C. § 658a which "depend[] on the performance of the Domestic Relations Section, [so] Defendant Brown and the employees under her supervision may appear to have an institutional financial interest in maximizing the establishment and enforcement of child support orders." *See id.* at 3 ¶¶ 6-7; 8-9 ¶¶ 1-5.[5] Patrick alleges that Brown violated his rights "[w]hile acting in the capacity of director and public officer." *id.* at 4; *see id.* at 2 ¶¶ 3-4. On March 13, 2026, Brown filed a Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), in which she argues that any official or individual-capacity claims brought against her are barred by Eleventh Amendment immunity, quasi-judicial immunity, and the *Rooker-Feldman* doctrine. *See* Motion, ECF No. 46. Patrick filed a Response in Opposition to Brown's Motion to

---

[5]      The Court notes that in the Second Amended Complaint, Patrick no longer explicitly argues that his claims are brought pursuant to 42 U.S.C. § 1983, aside from alleging that on June 23, 2025, Patrick mailed Brown a document in which he asserted that Brown denied his rights under 42 U.S.C. § 1983. *See* Second Am. Compl. 6 ¶ 1, ECF No. 43. Given that this is the avenue by which Patrick may bring his claims for constitutional and civil rights violations in this District, the Court takes a liberal reading of Patrick's *pro se* pleading and understands his current claims to be brought pursuant to § 1983, despite the lack of clarity.

       The Court also notes that the Second Amended Complaint only alleges constitutional violations under the Contract Clause of Article 1, Section 10, and the Fourteenth Amendment. *See id.* at 3 ¶ 5, 8-9 ¶ 3. Since this operative pleading renders Patrick's prior pleadings moot, the Court assumes that Patrick no longer intends to bring claims under the First, Fourth, Fifth, Seventh, and Thirteenth Amendments.

Dismiss on March 25, 2026. *See* ECF No. 49. The Court is now prepared to render a decision on the Motion.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(1) – Review of Applicable Law

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3). A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise present[s] competing facts." *Aichele*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

**B.    Eleventh Amendment Immunity – Review of Applicable Law**

"The Eleventh Amendment of the United States Constitution . . . imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity." *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (footnotes omitted). *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."); *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (explaining that this immunity extends to suits brought by in-state plaintiffs.); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003) ("This protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages."). "Individual state employees sued in their official capacity are []entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see Sheils v. Bucks Cnty. Domestic Rels. Section*, 921 F. Supp. 2d 396, 406 (E.D. Pa. 2013) ("[C]laims seeking retrospective injunctive and declaratory relief and damages against state employees in their official capacities are tantamount to suits against the Commonwealth itself. The Eleventh Amendment immunity therefore applies.") (citing *Hafer*, 502 U.S. at 25).

"Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atl.-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001)). Under the

second exception, a state's waiver of immunity must "be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367. *See* 1 Pa. Cons. Stat. § 2310 (Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, the "Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."); *see also* 42 Pa. Cons. Stat. § 8522(b) (listing the nine areas in which immunity has been waived). Under the third exception, which is based on the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), the "relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages," *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst*, 465 U.S. at 102-03). The plaintiff has the "burden of showing a substantial likelihood that he was likely to suffer some future injury at the hands of a named party." *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016).[6]

## C.  Quasi-Judicial Immunity – Review of Applicable Law

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (internal citation omitted), *superseded on other grounds by statute as recognized in Macellari v. Taylor*, 25-cv-6778, 2026 WL 383970, at

---

[6]     Also worth mentioning here is the distinction between the traditional concepts of Eleventh Amendment immunity and sovereign immunity, which are "two different doctrines of protection." *Quinn v. Palakovich*, No. 3:04-1894, 2005 WL 1155871, at *4 (M.D. Pa. Apr. 19, 2005), *report and recommendation adopted*, No. 3:04-1894, 2005 WL 1155873 (M.D. Pa. May 6, 2005). In short, "Eleventh Amendment immunity bars citizen suits against unconsenting states in federal court," *id.*, whereas "the doctrine of sovereign immunity bars damage claims for state law torts against 'the Commonwealth, and its officials and employees acting within the scope of their duties,'" *id.* (citing 1 Pa. Cons. Stat. § 2310) (internal quotations omitted). The claims before the Court trigger Eleventh Amendment immunity, so the Opinion will focus on this form of "official capacity" immunity, rather than sovereign immunity.

*1 (D.N.J. Feb. 11, 2026). Judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Bernard v. Ignelzi*, No. 25-1245, 2025 WL 3771352, at *2 (3d Cir. Dec. 31, 2025), *petition for cert. filed June 8, 2026*. An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Bernard*, 2025 WL 3771352, at *2 (internal citations omitted)). "Generally, . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Judicial immunity extends to suits for money damages and to suits for declaratory and injunctive relief. *See Bernard*, 2025 WL 3771352, at *2 (citing *Mireles*, 502 U.S. at 9 (money damages); *Allen v. DeBello*, 861 F.3d 433, 439 (3d Cir. 2017) (declaratory and injunctive relief)). Since judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles*, 502 U.S. at 11-12, or are taken as a result of a conspiracy with others. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Similarly, individuals charged with the duty of carrying out facially valid court orders enjoy quasi-judicial absolute immunity from liability in a suit challenging conduct prescribed by that order. *See Gallas,* 211 F.3d at 772–73; *see also Russell v. Richardson*, 905 F.3d 239, 249–50 (3d Cir. 2018) (explaining that "an officer's fidelity to the specific order[] of the judge marks the boundary for labeling [his] act quasi-judicial, and a court order carries an implicit caveat that the officer follow the Constitution in executing it") (internal quotations and citations omitted). The

scope of quasi-judicial immunity "extends to court personnel, such as domestic relations staff attorneys and hearing officers, 'who perform discretionary, and adjudicative functions under the guidance and direction of the courts.'" *Parker v. Lehigh Cnty. Ct. Domestic Rel. Section*, No. 23-cv-3263, 2023 WL 6881055, at *7 (E.D. Pa. Oct. 18, 2023*), aff'd sub nom. Parker v. Lehigh Cnty. Off. of Domestic Rels.*, No. 23-2920, 2024 WL 705707 (3d Cir. Feb. 21, 2024) (citing *Blackwell v. Tierney*, No. 21-1904, 2022 WL 19778, at *4 (W.D. Pa. Jan. 3, 2022)). Domestic relations section staff are entitled to quasi-judicial immunity from claims that "arise out of their duties for []DRS, specifically, implementing and enforcing child support orders. Their immunity is not rendered a nullity even if they made a mistake or improperly discharged those duties." *Id.* (citing *Lewis v. W. Roxbury Dist. Court*, No. 12-11544, 2013 WL 4854117, at *6 (D. Mass. Sept. 10, 2013)). Quasi-judicial immunity bars any such claims brought against Domestic Relations Section employees in their individual capacities. *Nellom v. Delaware Cnty. Domestic Rel. Section*, 145 F. Supp. 3d 470, 485 (E.D. Pa. 2015) (citing *Bryant v. Cherna*, 520 F. App'x 55, 58 (3d Cir. 2013); *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 495 (3d Cir. 1997)).

D.      **Motion to Dismiss under Rule 12(b)(6) – Pro Se Pleadings – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and italics omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Courts also have an obligation to construe the filings of *pro se* litigants liberally. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). This extends to the construction of *pro se* pleadings. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."), *as amended*, (Sept. 19, 2011); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Although *pro se*

litigants are entitled to have the substance of their filings liberally construed, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

## IV.   ANALYSIS[7]

### A.   Defendant Brown has Eleventh Amendment Immunity.

To the extent Patrick brings claims against Brown in her official capacity, any such claims are barred by Eleventh Amendment immunity. The Court takes judicial notice that "[t]he Domestic Relations Section (DRS) is a part of the Family Court[,] [which] is a division of the Berks County Court of Common Pleas. . . . The Domestic Relations Section is mainly responsible for working with families to establish and collect support for children and spouses." *General Department Information: About Us*, Berks County Domestic Relations Section (June 16, 2026), https://perma.cc/JCW8-WL3K. The Court of Common Pleas in any given county is considered an "arm" of the state entitled to Eleventh Amendment immunity. *See Parker v. Lehigh Cnty. Domestic Rels. Ct.*, No. 13-cv-6368, 2014 WL 11430961, at *2 (E.D. Pa. Apr. 15, 2014) (citing *Banks v. Court of Common Pleas FJD*, 342 F. App'x 818, 820-21 (3d Cir. 2009)), *aff'd sub nom. Parker v. Lehigh Cnty. Dom. Relation Ct.*, 621 F. App'x 125 (3d Cir. 2015). "Domestic Relations Offices are subdivisions of the Court of Common Pleas in each county in Pennsylvania and are 'subunit[s] of the Commonwealth's unified Judicial system.'" *Dormevil v. Domestic Rels. Off. Delaware Cnty. Pennsylvania Child Support Agency*, No. 23-cv-3025, 2023

---

[7]   The Court construes Defendant Brown's arguments under Rule 12(b)(1) to be facial challenges to jurisdiction, and so it considers the factual allegations of the Second Amended Complaint in the light most favorable to Patrick when determining whether Eleventh Amendment immunity or quasi-judicial immunity exist. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true.") (internal quotations omitted).

WL 6144845, at *6 (E.D. Pa. Sept. 20, 2023) (citing *Addlespurger v. Wecht*, No. 16-1157, 2018 WL 1412409, at *6 (W.D. Pa. Mar. 21, 2018)); *see Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 10 (3d Cir. 2008). As a part of the state's unified judicial system, *see* 42 Pa. Cons. Stat. § 961, DRS is entitled to immunity from suit in federal courts under the Eleventh Amendment. *See Bryant*, 520 F. App'x at 57-58; *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("[T]he Eleventh Amendment applies to suits against subunits of the State."); *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (The "Eleventh Amendment . . . bar[s] suits for monetary damages by private parties in federal court against a state or against state agencies."); *Codrington v. Parker*, No. 24-cv-5743, 2024 WL 5126267, at *3 (E.D. Pa. Dec. 16, 2024) ("Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages."); *Dormevil*, 2023 WL 6144845, at *6. This concept is well understood in this Circuit. *See Parker*, 2023 WL 6881055, at *5 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005), *abrogated/overruled in part on other grounds by Hamer v. Neighborhood Hous. Services of Chicago*, 583 U.S. 17 (2017)).

Though Patrick does not clarify whether his claims are brought against Brown in her official or individual capacity, he does repeatedly allege that Brown violated his rights "[w]hile acting in the capacity of director and public officer." Second Am. Compl. at 4; *see id.* at 2 ¶¶ 3-4. The Court interprets this as an official capacity claim against Brown in her acting role as DRS Director—a role which entitles her to Eleventh Amendment immunity. *See Bryant*, 520 F. App'x at 58 (The "director and employees" of a "Domestic Relations Section [are] entitled to Eleventh Amendment immunity in their official capacities because[] the county domestic relations sections are part of Pennsylvania's unified judicial system."); *Sheils*, 921 F. Supp. 2d at 406 ("[C]laims against [a defendant], in her official capacity as the DRS Director, consequently fail

because she and DRS enjoy the same Eleventh Amendment immunity from suit for retrospective injunctive and declaratory relief and damages under § 1983.").

Notably, however, there are three exceptions to Eleventh Amendment immunity: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Hess*, 297 F.3d at 323 (citing *MCI Telecomm. Corp.*, 271 F.3d at 503). Here, the first exception does not apply because Congress did not abrogate immunity in enacting 42 U.S.C. § 1983, the avenue by which Patrick brings his claims of alleged constitutional violations. *See Conklin v. Anthou*, 495 F. App'x 257, 263 (3d Cir. 2012) ("Congress, in enacting 42 U.S.C. §§ 1983 and 1985, did not abrogate this immunity through its enforcement power pursuant to § 5 of the Fourteenth Amendment.) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989); *Wheeling & Lake Erie Ry. v. Pub. Util. Comm'n,* 141 F.3d 88, 91 (3d Cir. 1998)). The second exception likewise does not apply because the Commonwealth of Pennsylvania has expressly declined to waive its immunity from suit in federal courts. 42 Pa. Cons. Stat. § 8521(b). *See Bryant*, 520 F. App'x at 57 (citing *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000)). As for the third potential exception, it is less than clear whether Patrick seeks prospective injunctive and declaratory relief because he does not explicitly request either form of relief in the Second Amended Complaint. Nonetheless, a liberal reading of the Second Amended Complaint reveals that Patrick—despite phrasing is as a wish to be free of involuntary "contractual" obligations—seemingly seeks to stop the enforcement of his state court child support order. *See* Second Am. Compl. at 7 ¶ 3 n.14; 10 ¶ 1. Since this could be interpreted as a request for

injunctive relief,[8] the Court shall proceed to consider whether the third exception to Eleventh Amendment immunity applies.

For the third exception to apply, Patrick needs "to allege facts from which it appear[s] substantially likely that he would suffer *future* injury" at the hands of Brown. *See O'Callaghan*, 661 F. App'x at 182 ("[I]njunctive relief anticipates future conduct among the named parties."). Here, Patrick only alleges that on some prior occurrence, Brown and "the employees under her direction" used "implied threats and trickery," Second Am. Compl. at 3 ¶ 5, to get Patrick to participate in his child support proceedings which resulted in a $330.46 monthly wage garnishment and the revocation of Patrick's passport privileges, *id.* at 10 ¶ 1. Having already received a state court judgment ordering that he pay child support, Patrick does not allege that he is likely to be subject to future proceedings. Patrick also does not allege that Brown is likely to engage in future "threats" against him—only that his rights *were* violated when he was previously told that an arrest warrant could issue if he failed to appear for his child support proceedings. *Id.* at 5-6 ¶ 2. Without additional facts in support of a potential future injury, the Court cannot presume the likelihood that future harm by Brown is forthcoming. *See O'Callaghan*, 661 F. App'x at 182. Even if Patrick had argued that future "threats and trickery" were impending, the Court is unaware of how DRS's mandating attendance at Patrick's child support proceedings, or enforcing a child support order against him, could constitute an "ongoing violation of federal law." *See Hess*, 297 F.3d at 323. The Pennsylvania Rules of Civil Procedure

---

[8]    To the extent Patrick does request injunctive relief, it is unlikely that the Court could grant it. The Third Circuit has noted that "only the United States Supreme Court may directly review and reverse the []DRS's decisions regarding []child support obligations." *Parker v. Lehigh Cnty. Ct. Domestic Rel. Section*, No. 23-cv-3263, 2023 WL 6881055, at *7 (E.D. Pa. Oct. 18, 2023), *aff'd sub nom. Parker v. Lehigh Cnty. Off. of Domestic Rels.*, No. 23-2920, 2024 WL 705707 (3d Cir. Feb. 21, 2024); *Parker v. Lehigh Cnty. Dom. Relation Ct.*, 621 F. App'x 125 (3d Cir. 2015) (citing 28 U.S.C. § 1257(a)).

permit a state court to issue a bench warrant for the arrest of a party that fails to appear at a

hearing as directed. *See* Pa. R. Civ. P. No. 1910.13-1.[9] Courts have repeatedly rejected the

argument "that a child support order must be consented to by way of a contract."[10] *See Williams*

*v. Philadelphia Child Support Fam. Ct. Div.*, No. 24-cv-6020, 2025 WL 1655323, at *4 (E.D. Pa.

---

[9]      Pennsylvania Rule of Civil Procedure 1910.13-1 states as follows:

  (a)  If a party fails to appear at a conference and/or hearing as directed by order of court, the court may issue a bench warrant for the arrest of the party if it finds
     (1) following a hearing on the record that the party had actual notice that the party was ordered to attend the conference and/or hearing, or
     (2) upon the affidavit of a hearing officer or conference officer that
        (i)     the order of court scheduling the conference and/or hearing was served by ordinary mail with the return address of the domestic relations section appearing thereon, that the mail was not returned to the domestic relations section within fifteen days after mailing, and that, at a date after the order of court was mailed, the domestic relations section has verified through the U.S. Postal Service or by electronic means that mail for the party was being delivered at the address to which the court order was mailed; or
        (ii)    the party signed a receipt indicating acceptance of a copy of the court order; or
        (iii)   an employee of the court handed a copy of the order to the party; or
        (iv)   a competent adult handed a copy of the court order to the party, and filed an affidavit of service.
  (b)  The request for a bench warrant shall be made by the domestic relations office within sixty days following the party's failure to appear. The request shall be in the form provided by Rule 1910.13-2(b), and shall include the hearing officer or conference officer's certification that the party has not appeared for any domestic relations matter involving the same parties since the date the party failed to appear.

*See* Pa. R. Civ. P. No. 1910.13-1.

[10]      Though the Court does not reach the merits of the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6), this point illuminates the futility of Patrick's argument that Brown violated the Contract Clause in Article 1, Section 10 of the U.S. Constitution. Courts within the Third Circuit have repeatedly dismissed claims brought by unwitting or recalcitrant parents arguing that their state court child support orders are unlawful if issued against their will. *See, e.g., Ibrahim v. N.J. Att'y Gen.*, No. 18-3461, 2020 WL 4016017, at *3 (D.N.J. July 14, 2020) ("[Plaintiff's] argument seems to be that the child support order is a sort of quasi-contract that was entered into unfairly and unlawfully, and thus void. . . . It is not; it is an order of the state court." (citations omitted)), *aff'd sub nom. Ibrahim v. Att'y Gen.*, No. 21-1128, 2021 WL 3012660 (3d Cir. July 16, 2021).

June 10, 2025) (citing cases), *aff'd sub nom. Williams v. Philadelphia Child Support Fam. Ct. Div.*, No. 25-2238, 2026 WL 36339 (3d Cir. Jan. 6, 2026); *Codrington*, 2024 WL 5126267, at *4. Plus, any claims predicated on the actions of DRS employees tasked with carrying out or enforcing a state court child support order are barred by absolute quasi-judicial immunity, as explained in greater detail below. *See Codrington*, 2024 WL 5126267, at *3 (citing *Baquero v. Mendoza*, 828 F. App'x 137, 140 (3d Cir. 2020); *Dongon v. Banar*, 363 F. App'x 153, 155–56 (3d Cir. 2010)); *see also Gallas,* 211 F.3d at 772–73. Thus, the third exception to Eleventh Amendment immunity does not apply. With nothing to inhibit the exercise of Eleventh Amendment immunity, the official capacity claims against Brown are jurisdictionally barred, and leave to amend these claims would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"), *abrogated on other grounds by*, *Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss with prejudice all claims brought against Brown in her official capacity.

### B.      Defendant Brown has Quasi-Judicial Immunity.

To the extent Patrick brings claims against Brown in her individual capacity, any such claims are barred by quasi-judicial immunity. *See Bryant*, 520 F. App'x at 58 ("Any claims against the[] employees [of a county's Domestic Relations Section] in their individual capacities for their roles in initiating and prosecuting child support proceedings would be barred by the doctrine of quasi-judicial immunity.") (citing *Ernst*, 108 F.3d at 495). DRS employees "enjoy the benefits of absolute quasi[-]judicial immunity because (1) their functions in proceedings are 'closely analogous to the functions performed by prosecutors in criminal proceedings'; (2) 'the public policy considerations that countenance immunity for prosecutors' are applicable to

Domestic Relations Section employees performing these functions; and (3) support proceedings 'incorporate important safeguards that protect citizens from unconstitutional actions' by such employees." *Nellom*, 45 F. Supp. 3d at 485 (citing *Ernst*, 108 F.3d at 495). Thus, any claims against Brown in her individual capacity, for her actions in implementing Patrick's child support proceedings and enforcing the resulting child support order, cannot persist, as she is entitled to quasi-judicial immunity for such actions. *See Parker*, 2023 WL 6881055, at *7 (citing *Baquero*, 828 F. App'x at 140 ("[W]e agree with the District Court's conclusion that defendants . . . are entitled to quasi-judicial immunity for their roles in implementing and enforcing child support orders"); *Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005) (per curiam) ("However, these defendants, all of whom are officers of the Domestic Relations Section of the Family Court of Lackawanna County, are entitled to quasi-judicial immunity for their actions in filing the Petition enforcing the Family Court's support order in accordance with Pennsylvania Rule of Civil Procedure 1910.25). Hence, the claims brought against Brown in her individual capacity are jurisdictionally barred as well. Since Brown is immune from suit on this basis, the Court finds that leave to amend the individual capacity claims would be futile. *See Alston*, 363 F.3d at 235. Accordingly, the Court will dismiss with prejudice all claims brought against Brown in her individual capacity.[11]

---

[11]    Even if the nature of Brown's work as DRS Director did not subject her to quasi-judicial immunity from suit, Patrick's claims brought against Brown individually pursuant to 42 U.S.C. § 1983 would likely be barred anyway. The Third Circuit has before suggested that individually named state court employees are not "persons" subject to liability for the purposes of § 1983. *See Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Separately—and despite the fact that the Court dismisses the Second Amended Complaint on jurisdictional immunity grounds and does not reach the merits of the claims under Fed. R. Civ. P. 12(b)(6)—to the extent Patrick asserts liability against Brown in her official or individual capacity because she is the Director of DRS and had employees acting "under her direction," he fails to state a plausible claim. *See Parker*, 2023 WL 6881055, at *7. Under

## V.    CONCLUSION

This Court finds that Defendant Tracy Brown is entitled to Eleventh Amendment immunity and quasi-judicial immunity, and thus all claims brought against her are jurisdictionally barred. Seeing as Brown is the only remaining Defendant in this matter, the Court dismisses the Second Amended Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), and declines to reach the arguments made in support of dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Brown's Motion to Dismiss the Second Amended Complaint is granted.

---

§ 1983, Brown cannot be held vicariously liable for the constitutional violations of her subordinates, unless Patrick asserts a *Monell* claim for municipal liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). To do so, Patrick would have to allege either (i) that Brown was responsible for a failure or inadequacy that "reflects a deliberate or conscious choice," *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019), such as a failure to train or supervise which "amounts to 'deliberate indifference' to the rights of persons with whom [her] employees will come into contact," *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Ctny.*, 749 F.3d 217, 222 (3d Cir. 2014), or (ii) that Brown implemented or executed a "policy or custom" that was "the 'moving force' behind a constitutional violation by an employee" of DRS, *Lebie v. Borough*, No. 13-cv-6819, 2014 WL 2085518, at *2 (E.D. Pa. May 16, 2014) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). Patrick does neither. Nowhere in the Second Amended Complaint is there any mention of deliberate indifference, a failure to train or supervise DRS employees, or the implementation of an unlawful policy or custom by Brown. Patrick only states that "employees of the Domestic Relations Section [acted] under the supervision and authority of Defendant Brown," *see* Second Am. Compl. at 5 ¶ 2, and that Brown "implement[ed] public policy for the State of Pennsylvania," *id.* at 2 ¶ 3, namely, "Title 42, The Public Health and Welfare, Chapter 7, Subchapter IV, Part D," *id.* at n.5. Patrick stops short of arguing that this particular public policy was unlawful or was implemented by Brown's subordinates in such a way as to deprive him of his constitutional rights. Accordingly, there is no *Monell* claim to be had here, and any argument that Brown was vicariously liable for the "employees under her direction" fails.

Given that the Court dismisses the Second Amended Complaint on jurisdictional immunity grounds, the Court also need not address the application of the *Rooker-Feldman* doctrine, or Patrick's due process allegations.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge